# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ADAPTOR, INC.,

        Plaintiff,

    v.                                                                                      Case No.  09-CV-1070

SEALING SYSTEMS, INC.,
d/b/a Ess Brothers & Sons, Inc.,

        Defendant.

---

# ORDER

On May 21, 2010, defendant Sealing Systems, Inc. ("SSI") filed a Motion to

Transfer Case to District Court of Minnesota (Docket #20), presumably pursuant to

28 U.S.C. § 1404(a).[1]  Subsequently, on June 9, 2010, plaintiff Adaptor, Inc.

("Adaptor") filed a Motion to Stay (Docket #22), requesting that the court stay

proceedings until completion of a pending patent reexamination ordered by the

United States Patent and Trademark Office ("PTO").  The court herein denies both

motions.

## BACKGROUND

This dispute arises from alleged patent infringement, with Adaptor requesting

a declaratory judgment, and SSI counterclaiming for infringement.  Adaptor filed its

complaint (Docket #1) in this court on November 13, 2009.  On July 23, 2010, the

District Court for the District of Minnesota transferred to this district two related cases

---

[1]The motion states it is pursuant to § 1404(b), but that provision relates to transfer between divisions within a district.

between the parties.[2] All three cases arise from related patent disputes, though SSI filed the two Minnesota cases some time after Adaptor's filing of this case. The Minnesota court found that, because the case at hand was filed first, it took precedence over the Minnesota case concerning the same patent and, as a result, transfer was required because no considerations of efficiency or the interests of justice weighed in favor of retaining the case. Order to Transfer 3 (E.D. Wis. Case No. 10-CV-622, Docket #56). The court then agreed that the second case, involving a different but related patent, should be litigated in the same forum, and thus transferred it as well. Order to Transfer 2. Meanwhile, on April 13, 2010, Adaptor filed a request with the PTO for an *ex parte* reexamination of the patent at issue in this case. The PTO granted the request and ordered the reexamination on May 21, 2010.

**ANALYSIS**

In the case of both motions, the requested actions reside within the discretion of the court. 28 U.S.C. § 1404(a); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, the exercise of that discretion follows two separate paths with distinct considerations. Thus, the court will discuss each motion in turn, though both are ultimately denied.

---

[2]Those cases are now before this court under case numbers 10-CV-622 and 10-CV-623.

## I.     Motion to Transfer

In light of the District of Minnesota's decision and Federal Circuit case law, the court finds it inappropriate to transfer this case and will deny the motion.  The federal venue transfer statute provides a district court with discretion to transfer a case for convenience or in the interest of justice.  28 U.S.C. § 1404(a).  When deciding a substantive issue of patent law, district courts apply Federal Circuit law.  *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (in reviewing district court cases, Federal Circuit applies own law with respect to patent law issues, and regional circuit law with respect to non-patent issues); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001) (Federal Circuit law applies if issue is of substantive patent law); *Alloc, Inc. v. Pergo, LLC*, 2010 WL 3808977 at *2 (E.D. Wis. Sept. 23, 2010) (because motion concerned substantive patent law, Federal Circuit law governed).  The issue of whether a declaratory action under patent law should give way to a later-filed infringement suit "invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits." *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled in part on other grounds by* 515 U.S. 277 (1995).  Under Federal Circuit law, "the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Id.*

The District of Minnesota recognized and applied this precedent in transferring its two cases to this district. This court finds the Minnesota court's transfer well-reasoned and sees no reason to needlessly complicate matters by transferring this case to Minnesota. To do so would in fact inconvenience parties and witnesses at this point by splitting up related matters between two states. Nor does the court find that the interests of justice so require. Thus, even under § 1404(a), the court sees no reason to exercise its discretion in transferring this action. However, *Genentech* lends even greater weight to the decision not to transfer. Considerations of judicial and litigant economy clearly counsel in favor of keeping this case in the same district as the related cases that have been freshly transferred. So too do considerations of just and effective disposition. To split up these cases would be far less effective and could more easily result in conflicting dispositions. Thus, not only do the considerations of *Genentech* fail to override the preference for the first-filed case's forum, but they in fact weigh heavily in favor of retaining that preference. Notions of comity between jurisdictions also support this outcome. The Minnesota district court has heard and decided the essentially equivalent issue, and this court will not disturb that decision without far better cause. Therefore, in light of the preceding discussion, the court finds that the best exercise of discretion is to deny the transfer.

II.     **Motion to Stay**

As to Adaptor's motion, the court finds a stay inappropriate in light of prejudice and an insufficient possibility of the stay simplifying issues. A district court has

inherent power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, a stay of "indefinite duration in the absence of pressing need" is an abuse of discretion. *Id.* at 255. Where district courts must decide whether to stay patent litigation during reexamination, they often look to: "(1) whether litigation is at an early stage; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Seaquist Closures LLC v. Rexam Plastics*, No.08-CV-106, 2008 WL 4691792, at *1 (E.D. Wis. Oct. 22, 2008).

As a starting point, the court does not find the requested stay to be of indefinite length. The Supreme Court noted that a stay is not immoderate where it is "so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Landis*, 299 U.S. at 257. As an example, the Federal Circuit acknowledged that a stay in order to resolve quiet title actions was indefinite where the government represented that it was prepared to file, but had not yet done so as of the date of appeal three years later, and even were the suits underway, judgment could be decades away. *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1415-16 (Fed. Cir. 1997). Here, while the statistics referenced by the parties (Def.'s Br. in Opp. Ex. B) (Docket #26), suggest an average reexamination pendency of 25.4 months, there is no question that the proceeding will come to completion within a reasonably estimable time. Though the potential pendency may be longer than desired, it is by no means

-5-

indefinite. Thus, the court will eschew analysis of whether Adaptor has shown "pressing need" and instead proceed to analyze the three factors for stays during reexamination. In sum, while it is early in the litigation, there is not enough of a guarantee that issues will be simplified through reexamination to support a stay in the face of prejudice to SSI.

## A. Simplification

Perhaps one of the strongest indicators that simplification of issues is too uncertain to support a stay is the nature of the reexamination. The PTO has ordered an *ex parte* reexamination, meaning that only the patent holder is involved. *See* U.S. Patent and Trademark Office, Manual of Patent Examining Procedure § 2209 (8th ed., rev. 8 2010). This type of proceeding, being *ex parte*, differs from an *inter partes* reexamination, which may involve a third-party who is then estopped from raising grounds that it did, or could have, raised in the reexamination. 35 U.S.C. § 315(c). While SSI will be held to any findings of invalidity or modification, Adaptor, and this court, will not be held to any findings of validity or modification. Thus, any possible simplification of issues may only occur from outright findings of invalidity, and, even in that case, SSI has a statutory right to appeal the reexamination decision. 35 U.S.C. § 306. While Adaptor argues that most claims which survive reexamination are amended, and thus are narrowed in their subject matter, that possibility does not persuade the court that the issues will be sufficiently simplified to justify a potential two-year delay.

Further, Adaptor itself notes that "the subject matter of the '533 patent is not overly complex." (Pl.'s Mem. in Supp. 6) (Docket #23). Thus, while the reexamination might *further* simplify the issues, this court is not so sure that the current state of the patent is so convoluted that simplification is necessary to conserve resources. Instead, it seems that waiting a possible two years for simplification will only drag the case out longer than necessary.

**B.     Prejudice**

As to prejudice, SSI argues that a two-year delay would be unjust, resulting in lost market share, price erosion, and loss to reputation. SSI also argues a heightened risk of lost evidence. Finally, SSI points out that the patents in question begin to expire in 2014. Adaptor responds that SSI has not substantiated the alleged prejudice, and that in any event a stay is not unreasonable even where there is supposedly loss of market share. Adaptor also argues that prejudice is ameliorated when other remedies are available.

While Adaptor is correct that money damages provide a remedy if SSI prevails, the court does not believe such damages provide sufficient reason to delay for possibly two years before SSI may even begin to litigate the enforcement of its rights. Further, the court does not see a need to create an independent inquiry requiring SSI to prove that it will lose market share and face eroding prices to justify denial of a stay. Given that the reexamination could take two years before litigation even begins, not including any time possibly spent appealing such decision, the

potential delay alone is enough to suggest loss of market share and eroded prices if an alleged infringer is allowed to continue its practices in the meantime. District courts in Texas have persuasively noted that where parties are direct competitors, a stay will likely cause prejudice. *Nidec Corp. v. LG Innotek Co.*, 2009 WL 3673433, at *4 (E.D. Tex. April 3, 2009); *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009). Further, "[t]he essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent. In view of that right, infringement may cause a patentee irreparable harm not remediable by a reasonable royalty." *Accumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008). A possible two-year delay before even beginning the process of vindicating that essential right weighs heavily here.

However, the delay alone is not sufficient, otherwise a stay might never be justified. But the surrounding circumstances of the reexamination support the conclusion. This is not a case in which the patent holder brought a suit for infringement and then sought reexamination on its own accord, thereby extending the time frame during which the alleged infringer may continue its activity. Nor is this a case where the patent holder initiated reexamination and then opposed a stay when the alleged infringer moved for one. In both situations, the danger of prejudice is far lessened. Where the patent holder is seeking to enforce rights and self-initiates a process by which it will delay ultimate vindication of its own rights, the possibility of prejudice is lessened. Where one party voluntarily initiates a separate

process, there is less justification in complaining that the other side should not be granted a stay. But here, we have a case where the patent holder has counterclaimed to enforce its rights and subsequently the alleged infringer has initiated reexamination, non-binding on the alleged infringer, at that, and asked for a stay that will delay the ultimate (possible) vindication of the patent holder's rights. The combination of these circumstances, the possibilities of lost market share and eroded prices, and the essential right to exclude at the heart of a patent, indicate enough prejudice to support denial here.

In fact, the circumstances at hand raise a suspicion of dilatory action on the part of Adaptor in filing for the reexamination. *See BarTex Research, LLC v. FedEx Corp.*, 611 F. Supp. 2d 647, 652 (E.D. Tex. 2009) (noting that patents are presumed valid and potential use of reexamination as dilatory tactic should be considered). While it was certainly not required to do so, if Adaptor truly wished to narrow the issues it seems more appropriate to have filed for an *inter partes* reexamination instead, where it could fully present its case before the PTO. While the court is not explicitly finding that Adaptor has engaged in dilatory tactics, the suggestion is enough in light of the prejudice discussion to tip the scales that much further against a stay.

**CONCLUSION**

As such, the reasoning of the District Court of Minnesota's order to transfer, as well as federal circuit case law and notions of comity lead this court to conclude

that transfer would be inappropriate.  Further, because prejudice to SSI in staying this action outweighs the early stage of litigation and the speculative possibility of simplifying the issues, a stay would also be inappropriate.  Thus, the court finds the better exercise of discretion is to deny both motions.

Accordingly,

**IT IS ORDERED** that the defendant's Motion to Transfer Case to District Court of Minnesota (Docket #20) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the plaintiff's Motion to Stay (Docket #22) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 21st day of October, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge